Whitley *v.* Ogle.

SAMUEL H. WHITLEY et al.

*v.*

WILLIAM OGLE.

1. A resulting trust arises by operation of law from contemporaneous circumstances, which give the legal and equitable titles different directions, and it must, therefore, arise at the instant the deed is taken and the legal title is vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time.

2. The person claiming that a resulting trust should be established in his favor, to succeed, must prove, by convincing and satisfactory evidence, that his money paid for the land.

3. Where a husband pays the purchase-money of land and has the land conveyed to his wife, the presumption which the law makes is, that the husband intended to make a gift to his wife, and this presumption must prevail, unless it is rebutted by convincing evidence.

On final hearing on bill, answer and cross-bill and proofs taken in open court.

*Mr. James P. Hoffman, Jr.,* for the complainants.

*Mr. M. T. Rosenberg,* for Mary Ann McGrayne.

*Mr. John A. Frech,* for William Ogle.

VAN FLEET, V. C.

There is but a single disputed question in this case, and that is, is the defendant, William Ogle, entitled to a decree establishing a resulting trust in his favor in the lands of which his wife, Sophia, died seized ? The lands in question were conveyed to "Sophia Ogle, wife of William Ogle," on the 12th day of April, 1884, and she died on the 22d day of September, 1888, intestate, and without having had issue. She left one brother and three sisters of the whole blood, and four nephews and one niece, children of a deceased sister of the whole blood. These persons were her heirs at law and succeeded to her lands on her death. The bill in this case was filed by some of her heirs at law against the others, asking for a partition of her lands. Her husband was made a defendant to the suit, because, about two weeks before her death, she had made a deed in her own name, alone, and without her husband, of the lands, to a third person, which person had subsequently, and before her death, conveyed them to her husband. It is not contended or pretended that the deed made by the wife alone passed the title to the lands, but the defendant, by cross-bill, says, that he purchased and paid for them, with his money, and that the title was made to his wife without

'his authority, consent or knowledge, and he, therefore, insists that a decree should be made, adjudging that his wife held the title to the lands in trust for him.

The two principles which must control the decision of the question at issue here are thoroughly established. *First*, a resulting trust can only be created at the very time when the land, which it affects, is conveyed to the trustee ; it cannot be raised from matters arising *ex post facto*. The exposition of this principle given by Chancellor McGill, in *Krauth* v. *Thiele, 18 Stew. Eq. 407, 409*, is more concise and accurate, in my judgment, than any other which has come under my notice. He says : "A resulting trust arises by operation of law from contemporaneous circumstances, which give the legal and equitable titles different directions. It must, therefore, arise at the instant the deed is taken and the legal title is vested in the grantee, and the situation of the transaction when the title passes is to be looked to, and not the situation preceding or following that time." And, *second*, to justify the court in establishing a resulting trust the evidence in support of it must be full, clear and satisfactory (*Krauth* v. *Thiele, supra*) ; in other words, the person claiming that a trust should be established in his favor, to succeed, must prove, by convincing and satisfactory evidence, that his money paid for the land. The form in which this principle was expressed in *Midmer* v. *Midmer's Exr., 11 C. E. Gr. 299, 304*, I still believe to be substantially correct. It was there said : " The effort always is, in cases of this class, to overcome and destroy a regular, formal, written title, by showing, by evidence less solemn and trustworthy than the written instrument, that though the deed says the purchase-money was paid by A, and the lands were conveyed to him for his own use and benefit, yet in truth he did not pay the purchase-money, but it was paid by B, and the conveyance was not [therefore, as a matter of equity] made to A for his own use and benefit, but to him in trust for B. To make such an effort successful, the law, for the safety of titles, requires that the proof shall be of the most convincing and satisfactory kind." There is another principle which should be mentioned in this connection, namely, that where a husband

pays the purchase-money of land and has the land conveyed to his wife, the presumption which the law makes is, that the husband intended to make a gift to his wife, and this presumption must prevail unless it is rebutted by convincing evidence. *Read* v. *Huff, 13 Stew. Eq. 229, 234.*

The proofs do not show that the defendant paid the purchase-money of the lands in question; the preponderance of the evidence, on this point,. on the contrary, goes rather to show that it was paid with the money of his wife. Though the deed states the consideration at $1,200, the grantor and the defendant both say that the consideration agreed upon and paid was $1,475.. The lands were conveyed subject to a mortgage of $1,000, so that that part of the consideration which was paid in cash was $475. Twenty-five dollars were paid when the bargain was made. The defendant made the bargain and paid the $25, and it may be that he paid it with his own money. He says he did. One hundred and seventy-five dollars were paid some time after and when the deed was delivered. This his wife paid, and when she paid it, she directed that her name should be inserted in the deed as grantee. On the day the deed was delivered, the defendant and his wife went, early in the morning, to the office of a lawyer in New York city, where the deed was to be delivered; the defendant left before the grantor and his wife arrived; he says he gave his wife, before leaving, about $250 or $300— between $200 and $300—and that she paid the $175 out of the money which he gave her. When, where and who paid the other $275 does not appear, except the defendant says that he paid it after the delivery of the deed. The grantor says that it must have been paid at some other time, but that he has no recollection concerning it. The defendant, at the time the deed was made, was a man of small means. He had been a soldier in the war of the rebellion; after leaving the army he became a truckman, and subsequently a horse-car conductor, and for several years prior to the making of the deed he had been a porter and shipping clerk in a mercantile house, in the city of New York, receiving wages at the rate of $15 a week. He has entirely failed to show where he obtained the money which he

says he gave his wife on the day the deed was delivered, or where he got the $275 which he says he paid to the grantor subsequent to the delivery of the deed. The proofs show that he did not draw either sum from bank, though it appears that he had, at that time, on deposit, in two different saving banks, over $990—he had over $588 in the Union Dime Savings Institution of New York city, and $405 in the Seamen's Bank for Savings of the same city. He does not pretend that he borrowed the money; on the contrary, he says he did not. All he says, as to the source from which the money came, is, that at that time he was in the habit of carrying on his person from $150 to $200. He also says, that his money was regarded as his wife's, and if she had any, it was regarded as his, and that if at any time he asked her for money, and she had any, he would get it. Such being the proof respecting the defendant's pecuniary condition when the deed was delivered, it would seem to be tolerably clear, that he could not have paid the whole of the purchase-money, even if it is believed that he had on his person the largest sum named by him, unless his wife furnished more than half the money. On the other hand, the proofs render it almost absolutely certain that, on the day the deed was delivered, his wife had money enough, within a few dollars, in hand to pay the whole of the purchase-money. She, too, had money on deposit in saving banks. The deed was delivered April 12th, 1884. On the 17th day of the preceding month, Mrs. Ogle drew from the Brooklyn Savings Bank $246.18, and from the Dime Savings Bank of Brooklyn, on the same day, $121, and from the Union Dime Savings Bank, on the very day the deed was delivered, $100.79, making a total of $467.97. These drafts put in her hands the whole amount required to pay for the lands less $7.03. The case is barren of the least evidence going to show that the moneys thus shown to have been in the hands of Mrs. Ogle, about the time these lands were paid for, were used by her for any other purpose than paying for the lands. But there is evidence tending to show that they were used for that purpose. This evidence consists of the defendant's own admission. A half brother of Mrs. Ogle, who has no

interest in this suit, swears that the defendant said to him, about a year after the date of the deed, that his wife owned the place; that she had had moneys which he knew nothing about, and that she had drawn them from the banks where they were deposited and paid for the place. The defendant denies, of course, that he made any such admission, but the testimony of the witness, swearing to the admission, is so strongly corroborated by the fact that the defendant's wife, about the time she acquired title, drew from bank nearly money enough to pay for the lands, and also by the further fact, that the defendant has failed to show that the money so drawn was used by his wife for some other purpose than paying for the lands, as to lead to a strong conviction that the admission was made, and moreover, that it was true.

This summary embraces everything to be found in the evidence material to the question to be decided. It should also be said, that there is evidence tending to show that Mrs. Ogle, on two or more occasions, said, that her husband owned the lands in question, and that she also said, quite frequently, that she was sorry that he did not have the property in his name, but she never said, so far as the evidence shows, that his money paid for the lands. And that is the vital fact, and the only one which can give the least support to the claim the defendant makes. As already mentioned, the lands were conveyed to Mrs. Ogle subject to a mortgage of $1,000. This mortgage was paid July 8th, 1884. The proofs make it certain that both the defendant and his wife contributed money to make this payment. He drew from one saving bank, July 5th, 1884, $338, and two days afterwards, from another, $450, and she, on the same day, drew from the same bank, $320. The two last drafts, it will be observed, were made on the day before the mortgage was paid. I have no doubt that part of the $788, drawn by the defendant, was applied to the payment of the mortgage, but whether it was applied under such circumstances as will entitle him, as against his wife's heirs, to be subrogated to the rights of the mortgagee, or to be reimbursed out of the land for the sum which he contributed, is a question which cannot on this record, at least in its present con-

dition, be considered. All that need now be said is, that no matter how large his contribution may have been, it gave him no right to a decree, adjudging that his wife held the legal title to the lands in trust for him.

The defendant's cross-bill must be dismissed.